# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY 1999 SESSION



FILED

July 22, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9901-CC-00020 |
| Appellee, | ) | |
| | ) | DECATUR COUNTY |
| VS. | ) | |
| | ) | HON. C. CREED MCGINLEY, |
| JOE FRANK BOYD, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Sentencing) |


**FOR THE APPELLANT:**

**CARTHEL L. SMITH, JR.**
85 East Church St.
Lexington, TN  38351

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**R. STEPHEN JOBE**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

**ROBERT ("GUS") RADFORD**
District Attorney General

**JERRY W. WALLACE**
Assistant District Attorney General
P.O. Box 637
Parsons, TN  38363


**OPINION FILED:** _____


**AFFIRMED; REMANDED
FOR ENTRY OF PROPER JUDGMENTS**


**JOE G. RILEY,
JUDGE**

## O P I N I O N

Defendant, Joe Frank Boyd, pled guilty to one hundred forty-one counts of Class C, D and E thefts. Sentences for each offense were agreed upon in defendant's plea agreement. However, the manner of service and the consecutive/concurrent nature of service were left to the trial court. After a hearing, the trial court ordered partial consecutive sentencing for an effective sentence of eighteen years. In this appeal as of right, defendant challenges the trial court's imposition of consecutive sentencing. Upon our review of the record, we **AFFIRM** the trial court's decision to impose partial consecutive sentencing. However, because the record contains discrepancies as to the actual number of years defendant was ordered to serve, we must **REMAND** this matter for entry of proper judgments.

## FACTS

Defendant owned Boyd Funeral Home. During the years 1988 through 1997, defendant sold "pre-need" funeral contracts to numerous people. The funds he received for these contracts were required to be held in a trust account. However, defendant converted over $670,000 of these funds to his own use. He testified that he used most of the converted funds in his funeral home business. He spent approximately $111,000 on medical expenses for his child.

The proof established that defendant had been untruthful to a state investigator on numerous occasions. As a result, he was able to continue his conversion scheme for several more years. The proof also established that defendant sold these contracts even while not licensed to do so, and that he forged trust account documents.

In sentencing defendant, the trial court noted that there had never been a crime in Decatur County which directly affected so many people. The judge described defendant's activities as "pervasive," "far reaching," and "traumatic." The trial judge further stated:

> In this case the evidence is quite strong that the defendant in this case derived if not all of his income certainly a majority of it from his predatory acts on members of the public here in Decatur County. He -- his own accounting showed that according to his figures that he lost money through his funeral business and that he supported himself wholly and solely on the funds that he stole from these people.
>
> . . .
>
> As I have indicated, the Court finds that essentially this person is a thief, he's a liar or a prevaricator or teller of falsehoods, however one wants to classify it. He's a predator that has victimized the elderly, the poor of this county. And he has engaged in a sustained pattern of criminal activities over a long period of time and he has in fact relied upon those activities as his major source of livelihood.
>
> . . .
>
> The Court finds that it's necessary to incarcerate him in this case, that essentially the public deserves protection from his future criminal activity.
>
> . . .
>
> [G]iven the pattern of deception [with] the regulatory agencies, pattern of deception in telling various people that he would make their contract good and issuing bad checks and has not, the potential -- there is just no indication that if . . . society were not protected from him, as was pointed out through witnesses who indicated that very well if he offered pre-need contracts they might subscribe to them in the very near future.
>
> The Court feels . . . that if this man is at liberty the public is at risk for further activities involving his crime [sic] nature[,] . . . [and] that it would not be in the best interest of society to put this man back out at liberty so that he could continue his criminal life.

The trial court further noted defendant's lack of candor, total lack of remorse, and that his "potential for rehabilitation is just very, very negative." Based upon these findings, the trial court denied an alternative sentence and ordered the sentences

3

for counts one through ten (excepting seven) to be served consecutively to one another for a total effective sentence of eighteen years.[1]

## STANDARD OF REVIEW

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d at 785, 789 (Tenn. Crim. App. 1991).

A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (1) [t]he defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood; or

> (2) [t]he defendant is an offender whose record of criminal activity is

---

[1]Specifically, the trial court pronounced from the bench the following: "Count one, a two year sentence. Count two, a three year sentence. Count four, a two year sentence. Count five, a two year sentence. Count six, a two year sentence . . . . Count seven is a nolle . . . . Count eight is a two year sentence. Count nine is a two year sentence. Count ten is a one year sentence. Those cases shall all run consecutive, which will mean an aggregate sentence of eighteen years in the Department of Corrections. The balance of the sentences shall run concurrently in this case." When added, these sentences total only sixteen years. The judgment form for count three, unmentioned by the judge in his oral ruling, reflects a two year consecutive sentence, bringing the total to eighteen years. However, while defendant's plea agreement for count four reflects a two year sentence as recited by the judge, the judgment form for count four indicates a three year consecutive sentence. Thus, the total effective sentence according to the judgment forms for counts one through ten is nineteen years.

4

extensive.

Tenn. Code Ann. § 40-35-115(b); *see also* State v. Black, 924 S.W.2d 912 (Tenn. Crim. App. 1995). Furthermore, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

## PRESUMPTION OF CORRECTNESS

In this case, the record demonstrates that the trial judge considered the sentencing principles and all relevant facts and circumstances. Thus, the presumption of correctness attaches to his findings. The trial court specifically found that the defendant was both a professional criminal, and that his record of criminal activity is extensive. Moreover, the court found that defendant's crimes were very severe, and that the public needed protection from further criminal conduct by him. The trial judge made clear, via the entirety of his careful and thorough findings, that he considered this sentence appropriate under the relevant sentencing principles.

## PROFESSIONAL CRIMINAL

Defendant argues that he should not be classified as a professional criminal because he earned substantial other income. The record belies this assertion. The proof established that, during the years 1988 through 1996, his business generated a total net loss. Clearly, defendant was relying heavily on stolen funds to stay in business. Furthermore, a defendant may earn substantial other income and still meet the definition of professional criminal. *See, e.g.*, State v. Troy Carney and

James Andrew Slaughter, Jr., No. 01C01-9412-CR-00425, Davidson County (Tenn.

5

Crim. App. filed February 23, 1996, at Nashville).

Defendant also contends that he is not a professional criminal because of his efforts at restitution. At the time of the sentencing hearing, approximately $100,000 had been paid toward the total restitution of $670,000. However, a large percentage of this money came from his wife's retirement fund. Indeed, the trial judge stated that defendant's efforts regarding restitution "have been extremely cavalier at best." Furthermore, efforts at restitution do not mitigate defendant's actions in knowingly devoting himself to stealing for a period of almost ten years.

Defendant also relies upon this Court's decision in State v. Eddie L. Howard, C.C.A. No. 03C01-9604-CC-00167, Hamblen County (Tenn. Crim. App. filed March 12, 1999, at Knoxville). In that case, the defendant was convicted of four cocaine sales of $200 each occurring over a two week period. The defendant's prior record consisted of a "retail theft" in Illinois and one or two convictions for driving without a license in Tennessee. The trial court determined that the defendant was a professional criminal on the basis that he was earning only $25 to $50 per week at his job. This Court disagreed with the trial court's determination because there was no evidence in the record that the defendant obtained his livelihood almost entirely through criminal activity.

The Howard case is clearly distinguishable from the case at bar. Contrary to defendant's argument, it does not hold that a defendant can be found a professional criminal only if he has an extensive prior criminal record; otherwise, the statutory provision for professional criminal would be superfluous to that for offenders with extensive records. We are required to construe statutes so that no part is rendered "inoperative, superfluous, void or insignificant." State v. Hall, 976 S.W.2d 121, 174 (Tenn. 1998). In this case, defendant systematically stole over $670,000 from the members of his community over the course of a decade. Since his business was not generating enough money to sustain itself, the stolen funds

6

were defendant's major source of livelihood.

The trial court's determination in this case that defendant is a professional criminal within the context of consecutive sentencing was correct.[2] *See* <u>State v. Frank Whitus</u>, C.C.A. No. 01C01-9301-CR-00038, Sumner County (Tenn. Crim. App. filed July 22, 1993, at Nashville) (defendant who systematically defrauded the Tennessee Housing Development Authority over three years, involving twenty-seven fraudulent loans amounting to over $1,000,000, was a professional criminal). This issue is without merit.

## *WILKERSON* FINDINGS

Defendant also argues that there is no indication in the record that he poses a threat to the public, or that he is likely to engage in future criminal activity. *See* <u>State v. Wilkerson</u>, 905 S.W.2d 933, 939 (Tenn. 1995). He contends that this was a "crime of opportunity" and that the opportunity no longer exists because he has lost his licenses to operate as a funeral director and embalmer. This argument ignores defendant's prior conduct in selling pre-need contracts while unlicensed to do so. It also ignores the fact that, at the time of the hearing, defendant was working for another funeral home, and that one of his customers testified he would buy a pre-need contract from defendant in the future if he could. Indeed, defendant's employer testified that he had hired defendant for his connections in the community, and "[t]here's a lot of people that still likes (sic) Joe Frank Boyd." The trial judge, in a much better position to judge the credibility of the defendant than this Court, specifically found that the public needed protection from defendant's criminal activity. The evidence does not preponderate against this finding.

## CONCLUSION

---

[2]Although not challenged by defendant, we also find correct the trial court's ruling that defendant is an offender whose record of criminal activity is extensive.

Defendant failed to carry his burden of proving that the trial court erred in sentencing him. We **AFFIRM** the trial court's determination that defendant serve a portion of his sentences consecutively for an effective sentence of eighteen years. However, because the trial court's pronouncement from the bench omitted defendant's sentence for count three, and because the judgment form for count four reflects a different sentence than that stated by the judge and agreed to by defendant, we must **REMAND** this matter in order for the trial court to correct these inconsistencies. We further note that each of the judgment forms for counts eleven through one hundred sixty indicates that the sentence for each of those offenses runs consecutively to counts one through ten (but concurrent with one another). This, too, appears inconsistent with the trial judge's ruling. Accordingly, on remand the trial court shall enter corrected judgments to reflect that those sentences run concurrently with counts one through ten. In all other respects, the judgment below is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOHN H. PEAY, JUDGE**

_____
**THOMAS T. WOODALL, JUDGE**

8